**HYOSUNG (AMERICA), INC., Plaintiff,**

**v.**

**AMERICAN PRESIDENT LINES, LTD., Defendant.**

No. 90 Civ. 6232 (KTD).

United States District Court, S.D. New York.

July 19, 1991.

Arthur J. Teichberg, P.C., New York City, for plaintiff.

Hill, Betts & Nash (Michael J. Ryan, of counsel), New York City, for defendant.

## MEMORANDUM & ORDER

**KEVIN THOMAS DUFFY, District Judge.**

Plaintiff Hyosung (America), Inc. ("Hyosung") commenced this action for recovery of losses occasioned by a misdelivery of goods never traced or recovered which were sent from Busan, Korea to the Dominican Republic on board a vessel owned by defendant American President Lines, Ltd. ("APL"). The parties now cross-move pursuant to Fed.R.Civ.P. 56. Additionally, APL requests the imposition of sanctions be assessed against Hyosung as appropriate for bringing a frivolous action.

## STATEMENT OF FACTS

Hyosung is a New York corporation in the business of selling textile goods. Plaintiff's Statement 3(g) ¶ 1. APL, a Delaware corporation, is a common carrier or transporter of goods by water. Plaintiff's Statement 3(g) ¶ 2. On March 13, 1989, Sulea Corporation ("Sulea"), a supplier and shipper, brought certain textile goods to APL so that it could then carry and deliver the goods by sea from Busan Korea to one of Hyonsung's customers, Kukje Corporation ("Kukje"), the intermediate consignee in Santo Domingo. Plaintiff's Statement 3(g) ¶ 3. Upon receipt of the goods, APL issued an order Bill of Lading Contract No. 417878 to Sulea. Plaintiff's Statement 3(g), ¶¶ 3–5. Sulea thereafter negotiated the Bill of Lading to Hyosung which then became the owner of the goods. Plaintiff's Statement 3(g) ¶ 6.

Instead of delivering directly to Kukje, APL released textile goods owned by Hyosung to a third party, Santo Domingo Port Authority, without presentation of the order Bill of Lading in issue. According to Hyosung, when it failed to receive notification indicating that the goods were properly delivered and on April 16, 1989, it requested that APL put a tracer on the shipment of goods. Lee Affid. in Opposition ¶ 6. Sometime thereafter, Hyosung officially notified APL of its claim to the goods on April 26, 1990. Lee Affid. in Opposition ¶ 7.

A second notice of claim was sent to APL on May 23, 1990, to which APL responded by requesting certain additional information from Hyosung. Immediately responding, Hyosung provided the requisite information to APL by letter dated May 31, 1990. No further inquiry or statement ensued and APL never rejected that second claim. On July 24, 1990, after approximately two months had passed and there was no further response or inquiry from APL, Hyosung commenced suit. Lee Affid. ¶¶ 10–12. Two days later, APL informed Hyosung that the shipment was supposedly delivered into the possession of the Santo Domingo Port Authority on April 16, 1989.

## DISCUSSION

It is undisputed that Hyosung has been unable to collect the purchase price of the merchandise from Kukje and that the prospects of recovering from that company are remote since numerous judgments and a federal tax lien filed against it are still unsatisfied. Nonetheless, APL refuses to deliver the goods or make payment to Hyosung. It is Hyosung's position that, pursuant to the Harter and Pomerene Acts, APL

is absolutely liable for the negligent misdelivery of the textiles in question here.

APL's Bill of Lading contract covering the shipment involved, in pertinent part, states:

2. CLAUSE PARAMOUNT. The receipt, custody, carriage and delivery of the Goods are governed by the provisions of the transportation agreement evidenced hereby and incorporated by this reference, including (i) the terms and conditions of the Carrier's applicable freght tariffs (ii) the terms and conditions stated on the front and back of the Bill of Lading, and (iii) the provisions of the U.S. Carriage of Goods by Sea Act, 1936, ("COGSA")[1] or the Hague Rules of 1921, as amended by the Brussels Convention of 1924, in effect in the country in which a court having jurisdiction adjudicates a dispute arising out of the transportation agreement....

24. The carrier and the Vessel shall be discharged from all liability in contract and in tort in respect of loss, damage, delay, misdelivery or conversion unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

■ APL avers that Hyosung's claim should be striken as time-barred because the terms of the contract should control and it was in excess of one year's time from the purported misdelivery that Hyosung decided to assert its rights and claim entitlement to the losses. I agree. Specifically, the misdelivery was made on or before April 16, 1989 and it was not until April 26, 1990 that Hyosung first gave notice of the claim. Also, it was not until August 31, 1990 that this action was commenced. *See* 46 U.S.C.App. § 1303(6) (action for misdelivery must be commenced within one year from date goods are delivered.) Although Hyosung purports to have made numerous inquiries as to the whereabouts of the shipment, there is nothing memorialized in the submissions indicating that any notice of claim was made prior to April 16, 1990. Indeed, there is nothing to indicate that such inquiries, even if made on the dates that Hyosung asserts them to have been made, suffice to vitiate the terms of the Bill of Lading or similar provisions which are contained in COGSA.

■ Furthermore, Hyosung urges that APL's release of the goods to the Port Authority in Santo Domingo, a party not holding the necessary documents or Bill of Lading, constituted an unjustifiable deviation from the contract's provisions and therefore the contract's time limitation periods should be abrogated. I disagree. Although it is axiomatic that after deviation, the shipper has the option to hold to the contract or to regard it as abrogated, misdelivery of cargo is not a deviation that bars resort to COGSA's damage limitations. *B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.,* 786 F.2d 90 (2d Cir.1986). "Prior to the enactment of COGSA, courts uniformly refused to characterize misdelivery as a deviation." *Id.* at 92 (citations omitted). Indeed, "non-delivery is not drastic enough a deviation to oust COGSA's one year limitations period."[2] *Id.* (citing *Hellyer v. Nippon Yesen Kaisya,* 130 F.Supp. 209 (S.D.N.Y.1955 (Weinfeld, J.))). As such, Hyosung fails to provide sufficient facts to withstand APL's motion for a summary dismissal.

■ Moreover, Hyosung asserts that the Bill of Lading, which required APL to place the goods in the custody of a bonded warehouse (for Kukje had not yet paid for the shipment) was breached for the goods were delivered to the Dominican Port Authority. APL, however, claims that it does not have a warehouse, bonded or otherwise, in Santo Domingo. Hanley Affid. Nor could APL accept instructions to place goods into a warehouse because it would be committing

---

1. The Bill of Lading contract incorporates the provisions of COGSA, which provides that suit must be commenced within one year from the date the goods are delivered lest the action be deemed time-barred. 46 U.S.C.App. § 1303(6).

2. While COGSA does not *per se* govern in this action (the shipment being from Korea to the Dominican Republic, and not "to or from" a port in the United States), the clause paramount in the Bill of Lading contract covering the transportation of the goods specifically provides that the provisions of COGSA shall apply.

itself to requisite warehouse charges without proper authorization. In any event, delivery to the Domincan Port Authority is sufficient to protect Hyosung's interests to have its goods in a bonded warehouse because the Domincan Port Authority undertakes responsibility for the goods once they are in custody. Hyosung thus fails to adduce facts sufficient to show the provisions of the Bill of Lading and COGSA should be avoided.

■ Lastly, any estoppel argument advanced by Hyosung, that it was lulled into a false sense of security because APL failed to respond to notices of claim, is unpersuasive. There is nothing adduced by Hyosung indicating that APL was less than forthright in this matter. That APL did not respond to Hyosung until it noticed the claim a second time is of no moment in light of the fact that up until that time, Hyosung provided APL with both incorrect voyage and Bill of Lading numbers. Moreover, the applicable Bill of Lading provision reads:

> Investigating, negotiating or otherwise dealing with claims by Carrier or its attorneys or representatives shall not be admission of liability and shall not be deemed a waiver of this provision.

Finally, APL's response to Hyosung which requested certain documentation set out the possibility that a time-bar defense would be raised because even its first notice of claim was not submitted until after one year had elapsed since the purported misdelivery.

■ Therefore, Hyosung's motion for summary judgment is denied; APL's motion is granted and the complaint is dismissed in its entirety. The request for Rule 11 sanctions is denied. There will be no such sanctions assessed against any party to this suit.

SO ORDERED.